UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                )
                                      )
DEBORAH K. HAFER                      )      Case No. 13-10568-BFK
                                      )      Chapter 7
            Debtor                    )

**MEMORANDUM OPINION AND ORDER
GRANTING SANCTIONS FOR VIOLATIONS OF
THE AUTOMATIC STAY**

In Virginia, the process for discovery in aid of execution on a judgment is known as debtor's interrogatories. *See* Va. Code § 8.01-506 (Circuit Courts); § 16.1-103 (General District Courts). When a debtor files for bankruptcy, the automatic stay prohibits the "continuation" of any judicial proceedings against the debtor to collect on a judgment. 11 U.S.C. § 362(a)(1). It is occasionally the practice of the State courts, when a debtor has filed for bankruptcy protection, to continue a debtor's interrogatories hearing for status, in order to determine whether the debtor has received a discharge. The Court holds that the practice of continuing a debtor's interrogatories hearing, and not dismissing the summons for debtor's interrogatories once it is known that the debtor has filed for bankruptcy, violates the automatic stay.

The matter comes before the Court on the Debtor's Motion for a Rule to Show Cause as to why Skillforce, Inc. ("Skillforce"), and its attorney, Ms. Tichenor, should not be sanctioned for their alleged violations of the automatic stay. Docket Nos. 29, 31. Skillforce and Ms. Tichenor filed a Memorandum in Opposition. Docket No. 38. The Court held a preliminary hearing on September 24, 2013, at which time the Court set the matter for an evidentiary hearing. The Court conducted an evidentiary hearing on October 23, 2013, at which the Debtor and Ms. Tichenor both testified, as well as Ms. McManus, who was the court reporter in the State court

proceedings. At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Opinion and Order sets forth the Court's Findings of Fact and Conclusions of Law.

## Findings of Fact

The Court, having heard the testimony of the witnesses, makes the following findings of fact:

1. On October 19, 2012, the General District Court of Loudoun County, Virginia, entered an *in personam* judgment against the Debtor, Ms. Hafer, in favor of Skillforce, in the amount of $12,997.11, consisting of $5,203.19 in principal, attorney's fees of $3,292.28, costs of $68, and pre-judgment interest. Debtor's Ex. 4. The judgment arose out of Ms. Hafer's guaranty of the debts of Hafer Construction, Inc., to Skillforce.

2. On December 27, 2012, Ms. Tichenor, as counsel for Skillforce, submitted a request for a Summons to Answer Debtor's Interrogatories, directed to Ms. Hafer as the judgment debtor. *Id.* The Clerk issued the Summons on December 28th, returnable to February 6, 2013. *Id.*

3. In connection therewith, Ms. Tichenor filed a request for a Subpoena Duces Tecum, to compel Ms. Hafer to bring with her documents related to her assets and liabilities. Debtor's Ex. 5. The Subpoena was issued, commanding Ms. Hafer to bring with her to the debtor's interrogatories hearing the documents identified in the attachment to the Subpoena. *Id.*

4. Ms. Hafer filed a Voluntary Petition under Chapter 7 with this Court at 3:53 a.m. on the morning of the debtor's interrogatories hearing, February 6th. Debtor's Ex. 1.

5. Ms. Hafer listed Skillforce as a creditor in her Schedules, care of Ms. Tichenor at Ms. Tichenor's office address in Leesburg. Docket No. 1, Schedule. F. Skillforce is listed in the

Clerk's matrix of mailing addresses for creditors, also care of Ms. Tichenor at her address in Leesburg. Skillforce also filed a proof of claim in the case, on April 2, 2013. Claim No. 2-1.

6. Ms. Hafer brought a copy of the Notice of Bankruptcy Case Filing (Debtor's Ex. 1) with her to the debtor's interrogatories hearing. She and Ms. Tichenor had a brief encounter before the Judge took the bench, in which Ms. Tichenor described the process of debtor's interrogatories, explaining that the Judge would swear Ms. Hafer in, and they would then go to a conference room, where the examination would be conducted. Ms. Hafer did not present Ms. Tichenor with the Notice of Bankruptcy Filing during this brief, pre-hearing encounter.

7. When the Judge took the bench, Ms. Hafer presented the Judge with her Notice of Bankruptcy Filing.

8. What occurred next at the hearing is the subject of some conflict in the testimony. Ms. Hafer testified that Ms. Tichenor advised the Judge that she had her court reporter present, and that she was prepared to proceed with the debtor's interrogatories, notwithstanding the bankruptcy filing. Ms. Hafer further testified that the Judge refused to allow Ms. Tichenor to proceed with the debtor's interrogatories, at which point, Ms. Tichenor requested that the court continue the debtor's interrogatories hearing for status.

9. Ms. Tichenor, on the other hand, testified that she did not seek to proceed with the debtor's interrogatories hearing that day. She further testified that she did not request that the court continue the matter for a status hearing; rather, she testified that the court continued the matter on its own.

10. The Court also heard the testimony of Ms. McManus, who is the court reporter engaged by Ms. Tichenor for purposes of the debtor's interrogatories hearing. The Court found Ms. McManus to be pleasant, forthright, and highly credible. Ms. McManus was in the

3

courtroom when the Judge called the case on February 6, 2013. Ms. McManus testified that, when presented with the Notice of Bankruptcy Filing, the Court asked Ms. Tichenor whether she was aware of Ms. Hafer's bankruptcy filing. Ms. Tichenor said that she was not aware of the filing. Ms. McManus testified that it was clear that the Judge was not going to proceed with the debtor's interrogatories hearing on that date. Ms. McManus further testified that Ms. Tichenor did not seek to proceed with the debtor's interrogatories hearing, that Ms. Tichenor did not request that the matter be continued for status, and that the Judge continued the matter for status without her requesting him to do so. This Court accepts Ms. McManus's testimony and finds that: (a) Ms. Tichenor did not seek to proceed with the debtor's interrogatories hearing on February 6th; and (b) the Judge continued the debtor's interrogatories hearing for status, to May 1, 2013, without Ms. Tichenor requesting that he do so.

11.    Ms. Hafer testified that she was "appalled" and "shocked" by the continuance, and that she felt "bullied" into having to appear a second time in court. She testified that she felt compelled to appear at the May 1 status hearing, for fear of having a capias issued for her arrest.

12.    Mr. Andrews, Ms. Tichenor's bankruptcy counsel, filed a Suggestion of Bankruptcy with the General District Court on March 14, 2013 (though, he mailed it directly to Skillforce at its offices in Baltimore, MD, and did not mail it to Ms. Tichenor). Debtor's Ex. 8.

13.    The General District Court held a status hearing on May 1, 2013. Ms. Hafer was present at the status hearing on May 1st, as was Ms. Tichenor. No court reporter was present. Ms. Hafer protested to the Judge that the status conference was a violation of her rights as a debtor in bankruptcy. The Judge took a recess. When he re-called the case, he asked Ms. Hafer what her view of the matter was. She responded (according to her own testimony) that "I

understand that everything is stayed, and it's the Court's practice to set a status for bankruptcy review."

14.    Ms. Tichenor's testimony in this regard is consistent with an Affidavit that she submitted in opposition to the Debtor's Motion to Show Cause in this case, in which Ms. Tichenor stated:

> Between February 6, 2013, and May 1, 2013, I received no communications from Deborah K. Hafer, or an attorney representing Ms. Hafer, indicating that the Loudoun Court was without power or jurisdiction to order a status review of the matter or that it was a violation of any federal law. It was my understanding from prior cases before the Loudoun Court that the use of status review is routine, used to monitor whether the debtor actually completes the bankruptcy or abandons the bankruptcy (which has occurred). If the bankruptcy filing is later abandoned, it would be terribly inefficient for the Loudoun Court to have simply dismissed the pending interrogatories and summons, which would then have to be re-filed and re-served. It has never been my understanding or belief that the Court's use of a bankruptcy review violated the automatic stay, as it is merely to review whether a party has continued with bankruptcy, whether there is still a stay in effect, and/or whether there has been a discharge granted.

Docket No. 38, Ex. A (Affidavit of Patricia E. Tichenor, Esq.), ¶ 18.

15.    The parties agree that the May 1st status hearing lasted about an hour and a half (including the time spent waiting for the Judge to call the case). The Judge overruled Ms. Hafer's objections, and set the case again for a status hearing, on September 9, 2013.

16.    On May 20, 2013, Ms. Hafer received her discharge in this case. Docket No. 21. The Clerk mailed a copy of the Notice of Discharge to all creditors and other parties in interest on May 23, 2013.

17.    On May 28, 2013, Ms. Tichenor filed a Praecipe with the Loudoun County General District Court, requesting that the matter be "dismissed as unsatisfied and removed from the Court's docket of September 9, 2013, at 10:00 a.m." Debtor's Ex. 6 (the "First Praecipe").

18. On August 20, 2013, the Debtor filed her Motion for Sanctions against Skillforce and Ms. Tichenor. Docket Nos. 29, 31. Ms. Tichenor testified that she received this Motion on August 22, 2013.

19. The next day, on August 23, 2013, Ms. Tichenor filed an Amended Praecipe with the General District Court, this time requesting that the matter be "dismissed as discharged in bankruptcy." Debtor's Ex. 7 (the "Amended Praecipe").

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Order of Reference of the U.S. District Court for this District of August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (A) (matters concerning the administration of the estate).

*1. The Court finds that the Automatic Stay Was Violated.*

Bankruptcy Code Section 362(a)(1) bars:

the commencement *or continuation*, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

11 U.S.C. § 362(a)(1) (emphasis added).

The Fourth Circuit has described the importance of the automatic stay, as follows:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir.1988) (quoting H.R.Rep. No. 95–595, at 340–41 (1977); S.Rep. No. 95–989, at 54–55 (1978), reprinted in U.S.C.C.A.N. 5787, 5840 & 6296–97).

When an individual is injured by a willful violation of the automatic stay, Section 362(k)(1) of the Bankruptcy Code provides that the individual "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to constitute willfulness, the creditor need not act with specific intent, but must only commit an intentional act with knowledge of the automatic stay. *Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292–93 (4th Cir.1986); *Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred (In re Gordon Props., LLC),* 460 B.R. 681, 690 (Bankr. E.D. Va. 2011); *Cherry v. Arendall (In re Cherry),* 247 B.R. 176, 187–88 (Bankr. E.D. Va. 2000) (discharge injunction case; citing *Better Homes* for the proposition that "the conduct of a creditor in violating the stay is willful when '[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it'").

Creditors are under an obligation to take affirmative steps in order to avoid violating the automatic stay. For example, a creditor who has had a pre-petition garnishment issued against the debtor is under an obligation to release the garnishment, once the bankruptcy is filed. *In re Brugueras*, 2012 WL 6055603, at *7 (Bankr. E.D. Va. 2012); *In re Manuel*, 212 B.R. 517, 519 (Bankr. E.D. Va. 1997) ("There can be little question that the continuation postpetition of a garnishment proceeding against a debtor is a violation of the automatic stay"); *Baum v. United Va. Bank (In re Baum),* 15 B.R. 538, 541 (Bankr. E.D. Va. 1981). A creditor in possession of property seized pursuant to a judgment lien, or pursuant to a consensual lien, where the property

7

has not yet been sold, must return the property to the debtor, subject only to the Court's determination of adequate protection of the creditor's interest in the property, pursuant to 11 U.S.C. § 363(e). *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 212 (1983); *In re Moffett*, 288 B.R. 721, 732 (Bankr. E.D. Va. 2002) (denying relief from the automatic stay and ordering return of a vehicle to the debtor, in a Chapter 13 case); *In re Woolridge,* 2001 WL 540302, at *1-2 (Bankr. E.D. Va. 2001); *In re Brown*, 237 B.R. 316, 320-21 (Bankr. E.D. Va. 1999). Judge Mayer of this Court has recently held that a creditor is under an affirmative obligation to file a release of a pre-petition judgment, indicating that the judgment has been discharged in bankruptcy. *In re Johnson*, 466 B.R. 67, 69-70 (Bankr. E.D. Va. 2012).

In this case, there is no question that Skillforce and Ms. Tichenor had actual notice of the filing of the bankruptcy case. Ms. Tichenor was advised of the bankruptcy filing at the February 6th hearing, when the Judge called the case. At that point, Ms. Tichenor should have dismissed the debtor's interrogatories summons. Ms. Tichenor argues that the General District Court continued the debtor's interrogatories for status, and that she did not request the continuance. The Court accepts this testimony. However, Ms. Tichenor could have, and should have, dismissed the debtor's interrogatories as soon as she learned of the bankruptcy filing, thereby obviating the need for a continuance by the Court. The General District Court would not have continued the matter for a status hearing, had Ms. Tichenor dismissed the Summons to Answer Debtor's Interrogatories upon learning of the bankruptcy filing.

The automatic stay is, by its nature, self-executing. *In re Glaser*, 2002 WL 32375007, at *16 (Bankr. E.D. Va. 2002) ("The automatic stay is a self-executing provision of the Bankruptcy Code and begins to operate nationwide, without notice, once the debtor files its petition for relief") (quoting *In re A.H. Robins Co., Inc.,* 63 B.R. 986, 988 (E.D.Va.1986) (Mehrige, J.)

(emphasis added), *aff'd Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198 (4th Cir.1988), *cert. dismissed*, *Joynes v. A.H. Robins Co., Inc.*, 487 U.S. 1260 (1988)). By its terms, Section 362(a)(1) bars the "continuation" of a civil action against the debtor. The Court understands that there is a difference between a "continuation" and a "continuance," but a continuance of a civil action is by its very nature a continuation of the litigation, not a stay of the litigation. To require the debtor to show up a second time in order to prove that she has been discharged places a burden on the debtor that the automatic stay does not contemplate, nor permit. Counsel, such as Ms. Tichenor, has access to the Court's docket through the Court's publicly available web site. Counsel can always check the docket to see whether or not the debtor has been discharged, or whether the case has been dismissed.

Ms. Tichenor suggests that dismissing the debtor's interrogatories summons is highly inefficient, requiring creditors to re-file and re-serve a summons to answer debtor's interrogatories, in the event that the bankruptcy case is dismissed. But, the vast majority of Chapter 7 bankruptcy cases filed with this Court and elsewhere result in a discharge, not a dismissal of the case.[1] Further, to require the debtor to appear a second time at a continued status hearing (with the implied threat of an arrest, should she fail to appear) places the burden on the debtor that cannot be countenanced, consistent with the automatic stay. Conversely, requiring creditors to re-file and re-serve debtor's interrogatories summonses in the relatively few cases where debtors' bankruptcy cases are dismissed or the debtors are denied a discharge, places the burden (and cost) where it should be in light of the broad protections imposed by the automatic

---

[1] The Administrative Office of U.S. Courts reports that for the period ending September 30, 2013, of the 1,067,289 Chapter 7 debtors with predominantly non-business debts, whose cases were closed during the preceding 12 months, 1,006,518, or 94% received their discharges. *See* Administrative Office of the United States Courts, Washington, DC, TABLE F-19A2, U.S. BANKRUPTCY COURTS – DEBTOR DISPOSITIONS AT CLOSING OF CHAPTER 7 CASES WITH PREDOMINANTLY NONBUSINESS DEBT CLOSED DURING THE 12-MONTH PERIOD ENDING SEPTEMBER 30, 2013 (unpublished table).

stay – with the creditor (here, the Court notes that Ms. Tichenor testified that, on average, the preparation of a debtor's interrogatories summons takes her about half an hour).

The Court does not see why a refusal to dismiss a debtor's interrogatories summons should be treated any differently from a refusal to dismiss a garnishment summons, or a refusal to turn over property that has been seized, but not sold, pre-petition. All of these actions are coercive in nature. In this case, the creditor improperly attempted to shift the burden to the Debtor to prove affirmatively that she had been discharged, after she filed for bankruptcy. The Court finds that there has been a violation of the automatic stay, in Ms. Tichenor's failure to dismiss the Summons to Answer Debtor's Interrogatories, upon learning of the filing of the Debtor's bankruptcy case.[2]

The Court does not, on the other hand, find any violation of the automatic stay related to the First Praecipe filed with the General District Court, dismissing the debtor's interrogatories Summons as "unsatisfied." *See In re Johnson*, 466 B.R. at 69-70 (requiring satisfactions of judgments to be noted as "discharged in bankruptcy"). Debtor's counsel did not call Ms. Tichenor in advance of filing the Motion to Show Cause, to advise Ms. Tichenor that the First Praecipe did not comply with Judge Mayer's opinion in *In re Johnson*. Further, as soon as Ms. Tichenor was alerted to the problem, she filed the Amended Praecipe, which complies with *In re Johnson*. The Court cannot find that the filing of the First Praecipe was willful, within the meaning of Section 362(k).

---

[2] To be clear, the Court is not going so far as to require that *all* pending civil actions be dismissed on the filing of a bankruptcy case. See *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002). The Court has little difficulty concluding, however, that the continuance of a debtor's interrogatories hearing, where the debtor is required to appear a second time in State court and explain the status of her bankruptcy case, on pain of being arrested, violates the automatic stay.

*2. Skillforce is Legally Responsible for the Acts of its Agent, Ms. Tichenor.*

There can be no question that Ms. Tichenor was acting as Skillforce's agent, in the collection of Ms. Hafer's debt. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) ("we have held that clients must be held accountable for the acts and omissions of their attorneys"); *In re Webb*, 472 B.R. 665, fn. 4 (6th Cir. B.A.P. 2012) ("Under 'general principles of agency law ... a creditor-principal is liable under § 362(k) for the acts of an agent [i.e., an attorney] who willfully violates the automatic stay taken when those acts are within the scope of their principal-agent relationship'"); *In re Henley*, 480 B.R. 708, 804 (Bankr. S.D. Tex. 2012) ("any knowledge [the attorney] acquired 'within the scope of [the] agency is imputed to the principal for purposes of determining whether the principal willfully violated the automatic stay'"); *In re Theokary*, 444 B.R. 306, 323-324 (Bankr. E.D. Pa. 2011). The advice of counsel is not relevant to whether or not there has been a stay violation, but it may be relevant in determining a sanction. *In re Gordon Props., LLC*, 2013 WL 5295246, at *12 (Bankr. E.D. Va. 2013) (a party's conduct "may be the result of advice of counsel, but it is the conduct that violates the stay").

Here, the Court accepts the fact that Skillforce was not in court on February 6th, other than through its agent, Ms. Tichenor. The Court further accepts the fact that Skillforce did not request its counsel to violate the automatic stay. However, the fact remains that Ms. Tichenor is Skillforce's agent, and under traditional principles of agency, Skillforce is liable for Ms. Tichenor's actions.

*3. The Damages Claimed by the Debtor.*

The Debtor claims two components of damages: (a) lost time; and (b) emotional distress damages. The Court will address the emotional distress damages first. While emotional distress

11

damages are recoverable as actual damages under Section 362(k), the Debtor must: "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay." *In re Seaton*, 462 B.R. 582, 603 (Bankr. E.D. Va. 2011) (quoting *Page Venture, LLC v. Ventura–Linenko (In re Ventura–Linenko)*, 2011 WL 1304464, at *9 (D. Nev. 2011)). Unless the creditor's conduct is particularly egregious, where emotional distress harm would be readily apparent, the claimant must establish emotional distress with corroborating evidence, such as expert testimony, medical testimony, or credible testimony from non-experts such as family members.

Here, the Debtor testified that she was "appalled," and "shocked," by the creditor's behavior. She testified that she suffered a panic attack, and that she had to increase her medications. The Debtor did not, however, have any corroborating evidence, either in the form of expert testimony from a psychiatrist or other mental health professional, or in the form of corroborating testimony from family members or others who had the opportunity to observe the Debtor's demeanor and behavior.[3] Moreover, the Debtor failed to show that any distress that she was experiencing was proximately caused by the continuance of the debtor's interrogatories hearing, as opposed to other stressful events that were occurring in her life at the time. The Court finds that the Debtor has failed to meet her burden of proof with respect to emotional distress damages.

Turning to the Debtor's claim for lost time, the Debtor was required to attend the February 6th hearing, because she had just filed for bankruptcy at 3 a.m. that morning, and she

---

[3] The Debtor included certain pharmacy receipts with her Exhibits. Debtor's Ex. 11. Ms. Tichenor objected to Debtor's Exhibit 11 (Docket No. 61), and this did not come into evidence.

had to be present to advise the General District Court of the bankruptcy filing. Accordingly, the Court will not award any damages for the Debtor's attendance at the February 6th hearing.

For the May 1st court hearing, the Debtor testified that she lost 4 to 6 hours of income, at $125 per hour. The May 1st hearing (including waiting time) was about an hour and a half. Allowing a half an hour for parking, and for being in court in advance of the Judge calling the case, and allowing one hour each way for travel to and from the General District Court, the Court finds that the Debtor lost 4 hours of her professional time. Given the Debtor's compensation of $125 per hour, the Court will award the Debtor the sum of $500 for her lost time, for attendance at the May 1st hearing.

The Debtor was not required to attend the September 9th hearing, because the two Praecipes removed the matter from the court's docket. The Court, therefore, will not award the Debtor any amount for the September 9th hearing. The Court will award the Debtor the sum of $500 as her actual damages in this case.

   *4. Attorney's Fees.*

Finally, Section 362(k)(1) expressly provides for the recovery of attorney's fees for individual debtors, in the event that the court finds that the stay has been violated. Among other things, attorney's fees must be reasonable, and must be proportional to what is at issue in the litigation. *Barber v. Kimbell's, Inc.*, 577 F.2d 216, 226-28 (4th Cir. 1978); *In re Seaton*, 462 B.R. 582, 605-6 (Bankr. E.D. Va. 2011). In light of the award of $500 in damages, above, the Court finds that a reasonable fee is $250.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED**:

13

1.     The Court awards the Debtor the sum of $500 in actual damages, plus $250 in attorney's fees, jointly and severally against Ms. Tichenor and Skillforce, Inc., to be paid within 14 days of the entry of this Order.

2.     The Clerk will mail copies of this Order, or provide cm-ecf notice of its entry, to the parties below.

Date: Nov 4 2013
_____

Alexandria, Virginia

/s/ Brian F. Kenney
_____
Brian F. Kenney
United States Bankruptcy Judge

eod  11/5/2013

Copies to:

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr. P.C.
122 North Alfred St.
Alexandria, VA 22314
(703) 838-9004
Counsel for the Debtor

Sarah A. Bucovetsky, Esquire
Sands Anderson, PC
1497 Chain Bridge Road, Suite 202
McLean, VA 22101
Counsel for Ms. Tichenor

David Ludwig, Esquire
DUNLAP WEAVER, PLLC
211 Church Street, SE
Leesburg, Virginia 20175
Counsel for Skillforce

Klinette H. Kindred, Esquire
Tyler, Bartl, Ramsdell and Counts
300 N. Washington Street, Suite 202
Alexandria, VA 22314
Trustee